UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA ELIZABETH CASTRO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:19-cv-00298-KJN<br><br>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 20) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in formulating her residual functional capacity by improperly assessing the severity of her impairments, improperly considering the impact of her obesity, and improperly discounting certain medical evidence and her subjective-symptom testimony.  The Commissioner opposes plaintiff's motion and filed a cross-motion for summary judgment.

Upon consideration of the record and briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes. (ECF Nos. 8, 9, 21.)

1

decision of the Commissioner.

## I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

On December 15, 2015 plaintiff applied for DIB, alleging an onset date of July 20, 2015. (Administrative Transcript ("AT") 15, 179-85.) Plaintiff's application was denied initially and again upon reconsideration. (AT 109-22.) Plaintiff, aided by an attorney, sought review of those denials with an Administrative Law Judge ("ALJ"). (AT 123-24.) The ALJ held a hearing on November 13, 2017, where plaintiff testified about her conditions and where a Vocational Expert also testified. (AT 36-72.)

On March 20, 2018, the ALJ issued a decision determining that plaintiff was not disabled from her onset date forward. (AT 31.) As an initial matter, the ALJ determined that plaintiff met the insured status requirements through December 31, 2020. (AT 17.) At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since her onset date of July 20, 2015. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, fibromyalgia, gout, carpal

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1). Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

tunnel syndrome, anxiety, and depression.  (Id.)  At the same time, the ALJ found "nonsevere" plaintiff's medically determinable impairments of hypothyroidism, asthma, sleep apnea, C. difficile infection, and pseudotumor cerebri.  (AT 17-18.)  At step three, the ALJ determined plaintiff's impairments did not meet nor medically equal the severity of an impairment listed in Appendix 1.  (AT 18) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  In doing so, the ALJ specifically found that "while obesity is a risk factor . . . , there is no evidence of any disabling musculoskeletal, respiratory, or cardiovascular impairment."  (Id.)  The ALJ also found plaintiff had mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself; and a moderate limitation in concentrating, persisting, or maintaining pace.  (AT 18-19.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform "sedentary" work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [Plaintiff] cannot climb, crouch, or crawl. She can occasionally kneel, stoop, or balance.  She can occasionally push and pull and can frequently reach, handle, and finger bilaterally. She can perform simple, repetitive tasks.

(AT 20.)  In fashioning this RFC, the ALJ rejected some of the more restrictive limitations found by plaintiff's treating physician, Dr. H. Kourdoni, along with the more severe aspects of plaintiff's subjective-symptom testimony.  (AT 21, 27-28.)  At step four, based on Vocational Expert ("VE") testimony, the ALJ found that plaintiff was not capable of performing her past relevant work. (AT 29.)  However, at step five, the ALJ found there were still a significant number of jobs available to her in the national economy.  (AT 30-31.)  Thus, the ALJ determined plaintiff was not disabled.  (AT 31.)

The Appeals Council denied plaintiff's request for review on December 26, 2018, making the ALJ's decision the final decision of the Commissioner.  (AT 1-6.)  Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; and the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 17, 20.)

///

///

## II. LEGAL STANDARD

In reviewing the agency's decision, a district court should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.

## III. ISSUES PRESENTED

Plaintiff argues the ALJ erred by (A) not finding one of her conditions—venous reflux—to be severe at step two; (B) inadequately considering the impact of her obesity on her other impairments; (C) discounting her treating physician's opinion; and (D) discounting portions of plaintiff's subjective-symptom testimony. (ECF No. 17 at 5.) Accordingly, plaintiff seeks a remand for further proceedings. (Id. at 16.)

## IV. DISCUSSION

### A. Step Two Severity Assessment

Legal Standard

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1522(a). An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

////

"Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). "It is not meant to identify the impairments that should be taken into account when determining the RFC." Buck, 869 F.3d at 1048-49. In order to find an impairment severe, the plaintiff must provide medical evidence beyond a mere diagnosis and cannot rely solely on symptom testimony. 20 C.F.R. 404.1529(a); see Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

Analysis

Here, the ALJ decided step two in plaintiff's favor, determining that plaintiff had severe physical impairments of degenerative disc disease of the lumbar spine, obesity, fibromyalgia, gout, and carpal tunnel syndrome. (AT 17.) The ALJ discussed five other conditions or diagnoses that he determined were not severe, but did not mention plaintiff's venous reflux in the step two analysis. (Id.) Although the ALJ should have made an express finding on the severity of plaintiff's venous reflux at step two, his failure to do so was harmless in this case.

There was no prejudice to plaintiff given that the ALJ decided step two in plaintiff's favor and went on to consider plaintiff's venous reflux diagnosis and symptoms when formulating the RFC at step four. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to identify impairment as severe at step two is harmless where the ALJ considers any limitations posed by the impairment at step four). Later in the decision, the ALJ explicitly noted plaintiff's venous reflux, attendant leg swelling and need to elevate, as well as her noncompliance with recommended treatment. (AT 20, 22, 24, 26-28.) Notably, the ultimate RFC included limitations in plaintiff's ability to walk and stand. (AT 20.) And other than her own testimony, plaintiff points to no evidence that the RFC should have contained additional limitations, such as needing to elevate her legs. See 20 C.F.R. 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); Ducey v. Saul, 2020 WL 5231494, at *4 (E.D. Cal. Sept. 2, 2020) (plaintiff's own statement of symptoms alone is insufficient to establish severity). Plaintiff thus fails to show how determining her venous reflux to be a severe

impairment at step two would have meaningfully changed the resulting RFC. See Buck, 869 F.3d at 1049 ("The RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not."). Therefore, the court finds no reversible error in the ALJ's step two analysis.

**B. Assessment of Plaintiff's Obesity**

Legal Standard

Even though obesity is not separately listed as an impairment, an ALJ must consider the impact of a claimant's obesity on their other impairments. SSR 02-01p (2002)[3]; Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003). The ALJ is required to "do an individualized assessment of the impact of obesity on an individual's functioning," and explain their evaluations and the combined effects. SSR 02-01p, 2002 WL 34686281, at *4; Marcia v. Sullivan, 900 F.2d 172, 176 (1990). "[An ALJ] will not make assumptions about the severity of function effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02-01p, 2002 WL 34686281, at *6. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)). Under Ninth Circuit precedent, an ALJ does not commit reversible error by not considering a claimant's obesity where the record does not indicate that the claimant's obesity exacerbated their other impairments. Burch, 400 F.3d at 683.

Analysis

Plaintiff contends the ALJ did not conduct an individualized assessment on her obesity's impact, thereby inadequately considering her obesity. (ECF No. 17 at 11-12.) The

---

[3] SSR 02-01p was rescinded by SSR 19-02p with an effective date of May 20, 2019. Because the ALJ decision in this case was issued on March 20, 2018, SSR 02-01p applied to this claim. See SSR 19-02p, 2019 WL 2374244, at *5 n.14.

1  Commissioner disagrees, arguing that the ALJ properly considered plaintiff's obesity and that
2  plaintiff has not presented evidence showing that her obesity exacerbated her other symptoms or
3  impairments.  (ECF No. 20 at 23-25.)  The undersigned agrees with the Commissioner and finds
4  the ALJ adequately considered and assessed plaintiff's obesity.
5        Plaintiff primarily relies on the Ninth Circuit's decision in Celaya, where the ALJ failed to
6  consider obesity and its effect upon the claimant's other impairments, "even implicitly."  332
7  F.3d at 1182.  In contrast to Celaya, and contrary to plaintiff's contentions, the ALJ here not only
8  recognized plaintiff's obesity as a severe impairment but also considered the effect of her obesity
9  in steps three and four.  (AT 17-29); see Garcia v. Comm'r of Soc. Sec. Admin., 498 Fed. Appx.
10 710, 712 (9th Cir. 2012) (finding that the ALJ adequately addressed plaintiff's obesity because he
11 not only recognized plaintiff's obesity as a severe impairment but also considered his obesity in
12 the resulting RFC).  In step three, the ALJ explicitly acknowledged that plaintiff's "obesity is a
13 risk factor and the effect it has on total body function must be considered pursuant to Social
14 Security Ruling 02-01p," but found no evidence that it caused "any disabling musculoskeletal,
15 respiratory, or cardiovascular impairment."  (AT 18.)
16       Throughout his analysis, the ALJ noted plaintiff's obesity and her physicians'
17 recommendations regarding her weight, contributing to the severity finding in step four.  (AT 17-
18 18, 20-24, 26-28.)  Numerous doctors—Drs. Scalapino, Kourdoni, Spoor, Acinas, and Hope—
19 noted plaintiff's morbid obesity in their assessments.  (AT 85-87, 102-04, 525-27, 540-46.)
20 Nevertheless, Doctors Scalapino, Spoor, Acinas, and Hope all found that her "physical exams
21 [were] mostly normal showing normal sensation, reflexes, and strength."  (AT 23-24; see AT 85-
22 87, 104, 527, 540-44.)  Incorporating the evidence and opinions of doctors who were aware of
23 and considered plaintiff's obesity, the ALJ concluded that plaintiff still had the RFC to perform
24 sedentary work.  (AT 20-29); see Bettis v. Colvin, 649 Fed. Appx. 390, 391 (9th Cir. 2016)
25 (finding no error in failing to recognize obesity as an impairment because the ALJ took into
26 account plaintiff's obesity in forming the RFC by crediting opinion of doctor who considered
27 plaintiff's weight in assessing functional abilities).
28       Plaintiff further argues that her "extreme level of obesity could cause increased

symptomology" for some of her other severe impairments, such as her degenerative disc disease. (ECF No. 17 at 12.) The Commissioner agrees that plaintiff's other impairments could have been related to or impacted by her obesity. (ECF No. 20 at 24.) However, plaintiff has not presented evidence of how her obesity itself restricted her beyond the limitations incorporated in the RFC. All plaintiff points to is that her BMI "is far beyond the 'extreme' obesity threshold," that she had a referral for bariatric surgery, and that Dr. Kourdoni listed morbid obesity on his Medical Assessment of Ability to Do Work-Related Activities. (ECF No. 17 at 11-12; AT 593, 869.) Although plaintiff argues that her extreme level of obesity *could* intensify her symptoms, she does not point to any supporting evidence in the record showing such an exacerbation. See SSR 02-01p, 2002 WL 34686281, at *6 (ALJ will evaluate whether or not obesity in combination with another impairment increases severity "based on the information in the case record"); Burch, 400 F.3d at 682-83; see also Campos v. Astrue, 656 F. Supp. 2d 1179, 1186 (C.D. Cal. 2009) (finding that plaintiff's speculation that her obesity might have had an impact "does not constitute evidence and falls short of meeting her burden of proof"). Therefore, the undersigned finds that the ALJ adequately considered and assessed plaintiff's obesity.

**C. Treating Physician Opinion and Evidence**

Legal Standard

Generally speaking, the ALJ is required to consider a host of factors in deciding the weight given to any medical opinion including the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, specialization, and any other factors deemed relevant. 20 C.F.R. § 404.1527(c)(1)-(6); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). An ALJ may reject a contradicted opinion of a treating or examining professional for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 2011).

Analysis

Plaintiff's treating physician, Dr. Kourdoni, opined that plaintiff's impairments were totally disabling. (AT 26, 593-94.) Most notably, he opined that plaintiff could stand and walk for a total of two hours in 15-minute increments, sit for only three or four hours in 30-minute increments, plaintiff would expectedly miss work more than four days per month, and would require 60 to 90 minutes to lie down during an eight-hour workday. (Id.) The ALJ extensively detailed plaintiff's treatment history and the objective medical analyses of her numerous complaints (AT 22-28), before assigning "little weight" to Dr. Kourdoni's opinion because "objective imaging, exams, and treatment do not support" those "significant functional limitations." (AT 27-28.)

All plaintiff argues on this issue is that this was not a legitimate rationale "because objective evidence need not fully support the level of severity alleged." (ECF. No. 17 at 13.) While legally correct, this argument is insufficient to support reversal. First, it is entirely proper for an ALJ to consider whether a treating physician's opinion is consistent with the record and supported by objective clinical findings. 20 C.F.R. § 404.1527(c)(3)-(4); Lester, 81 F.3d at 831; Tommasetti, 533 F.3d at 1041 (finding that an incongruity between the treating physician's opinion and her medical records was a specific and legitimate reason for rejecting her opinion). Furthermore, the ALJ did not rely *only* on the lack of supporting objective evidence. The ALJ also rejected Dr. Kourdoni's opinion based on plaintiff's treatment history and Dr. Kourdoni's treatment recommendations.[4] (AT 28.) The court also notes that Dr. Kourdoni's opinions are contradicted by the reviewing Doctors Spoor and Acinas, and the undersigned finds that the ALJ met his duty under Ninth Circuit precedent to set a detailed summary of the facts and conflicting evidence (AT 21-28), and make an interpretation thereof (AT 28-29). See Magallanes, 881 F.2d

---

[4] Plaintiff's treatment is discussed further in section D.

9

at 751.

Plaintiff's only other argument is that "[i]nsofar as the ALJ did not properly consider plaintiff's obesity," he also erred by not considering how plaintiff's obesity might support Dr. Kourdoni's opinion. (ECF No. 17 at 14.) But, as discussed above, the court finds no error in the ALJ's consideration of plaintiff's obesity. Accordingly, plaintiff's minimal argument on this issue fails to show any reversible error in the ALJ's treatment of Dr. Kourdoni's opinion.

**D. Plaintiff's Subjective-Symptom Testimony**

Legal Standard

In evaluating a claimant's report of his or her symptoms, the Ninth Circuit has established the following two-step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). A claimant's statement of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir. 2014).

The ALJ's reasons for discounting or rejecting a claimant's subjective-symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . .

did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Treichler, 775 F.3d at 1102. Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, inconsistencies between a claimant's testimony and their conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Burch, 400 F.3d at 681.

Analysis

Initially, the court notes that the ALJ did not entirely discredit plaintiff's allegations of severe pain and limitations. Indeed, the ALJ limited plaintiff to sedentary work. (AT 20.) The ALJ began by summarizing plaintiff's written subjective-symptom reports and testimony regarding her symptoms and daily activities provided at the November 2017 hearing. (AT 20-21.) Before reviewing the objective medical evidence (AT 24-25), the ALJ included the oft-repeated statement that while plaintiff's symptoms could reasonably be expected to cause the alleged symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AT 21.) Although the ALJ could have been more explicit, the undersigned finds that the ALJ nevertheless provided sufficiently identifiable "specific, clear and convincing reasons" for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (quoting Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 497 (2004)) (internal quotation marks omitted).

The ALJ's first reason for rejecting plaintiff's testimony was that the testimony was inconsistent with the medical record. (AT 21-29.) Contrary to plaintiff's assertion, it is legally permissible for the ALJ to reject a plaintiff's subjective-symptom testimony based on a lack of corroborating medical evidence, as long as that is not the only reason. 20 C.F.R § 404.1529(c)(2); Rollins, 261 F.3d at 857; Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) (noting that though a lack of medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider"). Here, although plaintiff asserts that she could not walk for more than 20 minutes, stand for more than 10, or sit while driving for more than 30 minutes (AT 41, 50), plaintiff's physical examinations showed normal sensations, reflexes, and motor strength, and a normal gait. (AT 24, 85-87, 104, 525-28, 540-44, 1049.) The ALJ additionally noted that there was no evidence that plaintiff was ever prescribed a cane, as she testified. (AT 28, 48.) And her recent cane usage followed an acute ankle injury, for which her podiatrist recommended only shoe inserts and a cam boot as needed. (AT 28, 1048-50.) In fact, five doctors, including three treating physicians, opined that plaintiff could walk without an assistive device. (AT 23-28, 85-87, 104, 525-28, 540-44, 1049.) Additionally, plaintiff's assertion of a totally disabling mental impairment is contradicted by her psychological examination showing a "normal thought content and process," and only a moderate impairment in her ability to complete a normal workday and deal with stress. (AT 25, 29, 554-57.)

The ALJ gave a second reason for rejecting plaintiff's subjective symptoms: her treatment history. Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch, 400 F.3d at 681. "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted). Here, the ALJ noted that plaintiff consistently declined referral for surgeries and did not comply with various recommended treatments. (AT 23 (declined referral to orthopedic physician), 27 (declined surgical consultation for carpal tunnel

syndrome), 28 (noncompliance with Dr. Kourdoni's recommendation to wear support stockings)().) In regards to her mental limitations, the ALJ noted that, despite plaintiff's assertion of disabling depression, "there is little psychiatric treatment," and "she had never been in counseling." (AT 24, 25.)

The ALJ additionally noted that many of plaintiff's treatments controlled her symptoms. (AT 22, 24, 27.) Plaintiff told Dr. Kourdoni at an April 2015 follow-up visit that her anxiety and depression were "under control" with medication. (AT 22, 480.) As for her physical impairments, treatment reduced her inflammatory markers to normal levels, and Dr. Kourdoni's records showed that colcrys helped with nearly all of her joint pain and body aches, while taking allopurinol brought her uric acid level back to normal. (AT 27, 502, 505, 507); see Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation and quotation marks omitted).[5]

These are legally sufficient reasons for rejecting plaintiff's more severe subjective complaints. See Carmickle, 533 F.3d at 1161; Tommasetti, 533 F.3d at 1039-40. The ALJ's analysis thus satisfies the Ninth Circuit's demanding standard.

///

///

///

///

///

///

///

///

---

[5] The undersigned further rejects plaintiff's underdeveloped argument that the ALJ improperly relied on plaintiff's daily activities to discount her testimony. Although the ALJ mentions plaintiff's reported daily activities at certain points, he did not discuss those activities at all in discounting plaintiff's subjective-symptom testimony. (AT 20-21, 25, 29.)

## V. **CONCLUSION**

In sum, the court concludes that the ALJ's decision was free from prejudicial legal error and is supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED; and
3. The Clerk of Court shall enter judgment for defendant, and close this case.

Dated:  March 2, 2021

*[Signature]*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cast.0298